**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

| | |
|---|---|
| **DOTHAN HOSPITALITY, LLC; ENTERPRISE HOTELS, LLC; ENTERPRISE HOSPITALITY LLC; HOPE HULL HOSPITALITY, LLC; MONTGOMERY DOWNTOWN HOTELS, LLC; MONTGOMERTY DT HOSPITALITY, LLC; P&T HOSPITALITY, LLC; AND VISION HOSPITALITY, LLC** | **PLAINTIFFS** |
| **v.** | **CIVIL ACTION NO.: 1:24-CV-408** |
| **UNITED STATES SMALL BUSINESS ADMINISTRATION; ISABELLA CASILLAS GUZMAN, IN HER OFFICIAL CAPACITY AS ADMINISTRATOR OF THE SMALL BUSINESS ADMINISTRATION; JANET YELLEN, IN HER OFFICIAL CAPACITY AS UNITED STATES SECRETARY OF TREASURY; THE UNITED STATES DEPARTMENT OF JUSTICE; AND ATTORNEY GENERAL MERRICK GARLAND** | **DEFENDANTS** |

<u>**COMPLAINT FOR DECLARATORY JUDGMENT**</u>
<u>**AND MANDAMUS RELIEF**</u>

COME NOW, Plaintiffs Dothan Hospitality, LLC ("Dothan Hospitality"), Enterprise Hotels, LLC ("Enterprise Hotels"), Enterprise Hospitality, LLC ("Enterprise Hospitality"), Hope Hull Hospitality, LLC ("Hope Hull"), Montgomery Downtown Hotels, LLC ("Montgomery Downtown"), Montgomery DT Hospitality, LLC ("Montgomery DT"), P&T Hospitality, LLC ("P&T Hospitality"), and Vision Hospitality, LLC ("Vision Hospitality") (collectively, "Plaintiffs"), by and through their attorneys, and as for its Complaint against Defendants and alleges as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.     This is an action for a declaratory judgment pursuant to Federal Rule of Civil Procedure 57 and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, for the purpose of determining a question of actual and immediate controversy between the parties.

2.      Plaintiffs seek a declaratory judgment that (1) Plaintiffs were eligible to apply for a Paycheck Protection Program ("PPP") loan; (2) Plaintiffs were eligible to receive a PPP loan; (3) Plaintiffs' commingling of PPP loan proceeds with current monies in existing bank accounts was not prohibited by and did not violate the U.S. Code or SBA regulations; (4) Plaintiffs used the PPP loan proceeds appropriately for eligible expenses; (5) Plaintiffs' use of its own funds, which were commingled with but in excess of PPP loan proceeds, for non-PPP purposes did not violate the U.S. Code or SBA regulations, and (6) Plaintiffs did not falsely certify its PPP loan forgiveness application.

3.      Further, Dothan Hospitality, Enterprise Hotels, Hope Hull, and Montgomery Downtown seek mandamus relief pursuant to 28 U.S.C. §§ 1331, 1361 and 1651(a) compelling Defendants to forgive their Second Draw PPP Loan.

4.      Defendant U.S. Department of Justice has issued Civil Investigative Demands ("CIDs") to Plaintiffs in an effort to determine the legitimacy of PPP loans and associated loan forgiveness extended to Plaintiffs by Defendant United States Small Business Administration ("SBA"), presumably in an effort to bolster allegations of violations of the False Claims Act and FIRREA. As such, an actual case and controversy exists.

## PARTIES

5.      Dothan Hospitality is a dissolved limited liability company organized under the laws of Alabama with its principal office located at 1305 Mall of Georgia Blvd., Suite 201, Buford, Georgia 30519. Dothan Hospitality owns and operates a Best Western Inn & Suites, 1650 Westgate Parkway, Dothan, Alabama 36303, located in the Middle District of Alabama.

6.      Enterprise Hotels is a limited liability company organized under the laws of Alabama with its principal office located at 1305 Mall of Georgia Blvd., Suite 201, Buford, Georgia 30519. Enterprise Hotels owns and operates a Fairfield Inn & Suites, 100 Brabham Drive,

Enterprise, Alabama 36330, located in the Middle District of Alabama.

7.     Enterprise Hospitality is a limited liability company organized under the laws of Alabama with its principal office located at 1305 Mall of Georgia Blvd., Suite 201, Buford, Georgia 30519. Enterprise Hospitality owns and operates a Hampton Inn & Suites, 8 West Pointe Court, Enterprise, Alabama 36330, located in the Middle District of Alabama.

8.     Hope Hull Hospitality is a limited liability company organized under the laws of Alabama with its principal office located at 1305 Mall of Georgia Blvd., Suite 201, Buford, Georgia 30519. Hope Hull Hospitality owns and operates a Fairfield Inn & Suites, 7560 Mobile Highway, Montgomery, Alabama 36105, located in the Middle District of Alabama.

9.     Montgomery Downtown Hotels is a limited liability company organized under the laws of Alabama with its principal office located at 1305 Mall of Georgia Blvd., Suite 201, Buford, Georgia 30519. Montgomery Downtown Hotels owns and operates a DoubleTree hotel, 120 Madison Avenue, Montgomery, Alabama 36104, located in the Middle District of Alabama.

10.     Montgomery DT Hospitality is a limited liability company organized under the laws of Alabama with its principal office located at 1305 Mall of Georgia Blvd., Suite 201, Buford, Georgia 30519. Montgomery DT Hospitality owns and operates a SpringHill Suites, 152 Coosa Street, Montgomery, Alabama 36104, located in the Middle District of Alabama.

11.     P&T Hospitality is a limited liability company organized under the laws of Alabama with its principal office located at 1305 Mall of Georgia Blvd., Suite 201, Buford, Georgia 30519. P&T Hospitality owns and operates a Hampton Inn & Suites, 100 Commerce Street, Montgomery, Alabama 36104, located in the Middle District of Alabama.

12.     Vision Hospitality is a limited liability company organized under the laws of Alabama with its principal office located at 1305 Mall of Georgia Blvd., Suite 201, Buford, Georgia 30519. Vision Hospitality owns and operates a Hampton Inn & Suites, 60 Wasden Road,

Hope Hull, Alabama 36043, located in the Middle District of Alabama.

13.    Defendant United States Small Business Administration ("SBA") is an independent federal agency created and authorized pursuant to 15 U.S.C. § 633 *et seq.* Under the Coronavirus Aid, Relief, And Economic Security ("CARES") Act, the SBA administers the PPP.

14.    Defendant Isabella Casillas Guzman is the Administrator of the SBA and is sued only in her official capacity. Because she is the officer with final authority for administering the PPP within the SBA, Administrator Guzman is a proper defendant for this cause of action.13 C.F.R. § 101.1 01(a)(1-2).

15.    Defendant Janet Yellen is the Secretary of the United States Department of Treasury and is sued only in her official capacity.

16.    Defendant U.S. Department of Justice ("DOJ") is an executive department of the United States federal government.

17.    Defendant Merrick Garland is the Attorney General of the United States, the principal officer of DOJ, and is sued only in his official capacity.

## JURISDICTION & VENUE

18.    This Court has jurisdiction over the subject matter of this civil action under 28 U.S.C. §§ 1331 and 2201 because the claims arise under the laws of the United States.

19.    This Court also has jurisdiction pursuant to 15 U.S.C. § 634(b)(1) which vests jurisdiction in any United States District Court to adjudicate cases against the Administrator of the SBA.

20.     The jurisdiction to grant declaratory relief is conferred upon the Court by Rule 57 of the Federal Rules of Civil Procedure as well as 28 U.S.C. § 2201.

21.    The SBA's denial of PPP relief to Plaintiff are final agency actions under 5 U.S.C. § 704, which this Court has authority to review under 5 U.S.C. § 702.

22.     Further, Dothan Hospitality, Enterprise Hotels, Hope Hull, and Montgomery Downtown, seek mandamus relief pursuant to 28 U.S.C. §§ 1331, 1361 and 1651(a) compelling Defendant SBA to forgive their Second Draw PPP Loans.

23.     Venue is proper in this judicial district under 28 U.S.C. § 1391(e) because this is an action against officers and agencies of the United States, a substantial part of the events giving rise to the claims occurred in this judicial district, Plaintiffs are incorporated and operate in this judicial district, and no real property is involved in the action.

24.     Venue is also proper in this judicial district specifically because the U.S. Department of Justice is conducting an investigation into Plaintiffs, and these investigations focus primarily on conduct within this judicial district.

## LEGAL BACKGROUND

### I.     The CARES Act and the Paycheck Protection Program

25.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic.

26.     One source of relief provided by the CARES Act was the authorization of forgivable loans to businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). The program was modified and extended thereafter.

27.     To obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan.

28.     In the PPP loan application (SBA Form 2483), the business (through its authorized representative) was required to provide, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation confirming their payroll expenses.

29.     A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan and subsequent forgiveness process.

30.     PPP loan proceeds were required to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

A.  <u>First Draw PPP Borrower Application Form</u>

31.     The PPP Borrower Application Form, effective April 2, 2020, required the applicant to make the following certifications and authorizations, *inter alia*, relevant to this matter:

      a.  The applicant was eligible to receive a loan under the rules ("PPP Rules") in effect at the time this application was submitted;

      b.  All SBA loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules;

      c.  That funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the PPP Rules;

- 6 -

    d.   That applicant would provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following the loan;

    e.   That the applicant understood that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities, and not more than 25% of the forgiven amount may be for non-payroll costs; and

    f.   That the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

**B.** <u>First Draw PPP Loan Forgiveness Applications</u>

    32.   The First Draw PPP Loan Forgiveness Application Form 3508EZ, expiration date October 31, 2020, required the eligible recipient to make the following certifications:

    a.   That the dollar amount for which forgiveness was requested:

- was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments);

- included payroll costs equal to at least 60% of the forgiveness amount; and

- if a 24-week Covered Period applied, did not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual.

    b.   That the Borrower did not reduce salaries or hourly wages by more than 25 percent for any employee during the Covered Period or Alternative Payroll Covered Period compared to the period between January 1, 2020 and March 31, 2020;

    c.   That the information provided in the application and the information provided in all supporting documents and forms was true and correct in all material respects and that the applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law; and

    d.   That the tax documents the applicant submitted to the Lender were consistent with those the Borrower has submitted/would submit to the IRS and/or state tax or workforce agency.

    In addition, the Authorized Representative of the Borrower must certify by initialing at least **<u>ONE</u>** of the following two items:

e. That the Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period (other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020, and reductions in an employee's hours that a borrower offered to restore and were refused).

f. That the Borrower was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020, by certain federal governmental agencies, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

C. Second Draw PPP Borrower Application Form

33.    The Second Draw PPP Borrower Application Form, effective January 8, 2021, required the applicant to make the following representations, authorizations, and certifications, *inter alia*, relevant to this matter:

a. That the applicant was eligible to receive a loan under the rules in effect at the time the application was submitted;

b. That all loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules;

c. That the applicant had realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period;

d. That the funds would be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules;

e. That the applicant understood that loan forgiveness would be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, covered utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures, and not more than 40% of the forgiven amount may be for non-payroll costs; and

f. That the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

D. <u>Second Draw PPP Loan Forgiveness Applications</u>

    *i.*      *Form 3508S (loans $150,000 or less)*

34.    The Second Draw PPP Loan Forgiveness Application Form 3508S, revised January 19, 2021, with an expiration date of July 31, 2021, required the eligible recipient to make the following certifications:

    a.    That the Borrower complied with all requirements in the PPP Rules, including the rules related to:

- eligible uses of PPP loan proceeds;

- the amount of PPP loan proceeds that must be used for payroll costs;

- the calculation and documentation of the Borrower's revenue reduction (if applicable); and

- the calculation of the Borrower's Requested Loan Forgiveness Amount.

    b.    That the information provided in this application was true and correct in all material respects and that applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law.

    *ii.*      *Form 3508EZ*

35.    The Second Draw PPP Loan Forgiveness Application Form 3508EZ, revised January 19, 2021, expiration date July 31, 2021, required the eligible recipient to make the following certifications:

    a.    The dollar amount for which forgiveness is requested (which does not exceed the principal amount of the PPP loan):

- was used to pay business costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; business utility payments; covered operations expenditures; covered property damage costs; covered supplier costs; or covered worker protection expenditures);

- includes payroll costs equal to at least 60% of the forgiveness amount; and

- for any owner-employee (with an ownership stake of 5% or more) or self-employed individual/general partner, does not exceed 2.5 months' worth of compensation received during the year used to calculate the PPP loan amount, capped at $20,833 per individual in total across all businesses.

b.  The Borrower did not reduce salaries or hourly wages of any employee by more than 25 percent for any employee during the Covered Period compared to the most recent quarter before the Covered Period;

c.  The Borrower used all First Draw PPP Loan amounts on eligible expenses prior to disbursement of the Second Draw PPP Loan;

d.  The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects and applicant understand that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law; and

e.  The tax documents I have submitted to the Lender (if applicable) are consistent with those the Borrower has submitted or will submit to the IRS and/or state tax or workforce agency.

In addition, the Authorized Representative of the Borrower must certify by initialing at least **ONE** of the following two items:

f.  The Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period (other than any reductions that arose from an inability to rehire individuals who were employees on February 15, 2020, if the Borrower was unable to hire similarly qualified employees for unfilled positions on or before December 31, 2020 (or, for a PPP loan made after December 27, 2020, before the last day of the Covered Period), and reductions in an employee's hours that a borrower offered to restore and were refused).

g.  The Borrower was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020 (or, for a PPP loan made after December 27, 2020, requirements established or guidance issued before the last day of the Covered Period), by certain federal governmental agencies, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19.

II.    **The False Claims Act**

36.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

37.    The FCA provides, in pertinent part, that any person who:

(a)(1)(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

(a)(1)(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

is liable to the United States for three times the amount of damages which the United States sustains, plus a civil penalty per violation. 31 U.S.C. § 3729(a)(1).

38.    FCA penalties are regularly adjusted for inflation, pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015. *See* 28 U.S.C. § 2461 note. For violations occurring after November 2, 2015, the civil penalty amounts currently range from a minimum of $13,946 to a maximum of $27,894. *See* 28 C.F.R. § 85.5.

39.    For purposes of the FCA, the terms "knowing" and "knowingly"

  a.   mean that a person, with respect to information—

        (i)  has actual knowledge of the information;

        (ii) acts in deliberate ignorance of the truth or falsity of the information; or

        (iii) acts in reckless disregard of the truth or falsity of the information; and

  b.   require no proof of specific intent to defraud.

31 U.S.C. § 3729(b)(1).

40.    Under the FCA, the term "claim" includes requests to the United States for payment, whether made directly or indirectly to the United States. 31 U.S.C. § 3729(b)(2)(A).

41.    The FCA defines "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

### III.   FIRREA

42.   Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

43.   Section 951 of FIRREA, as amended, codified at 12 U.S.C. § 1833a, provides that the Attorney General may recover civil penalties of up to $1 million per violation against persons who commit specified violations as established by a preponderance of the evidence. 28 C.F.R. § 85.5 (the maximum civil penalty was increased to $2,073,133 for assessments after December 13, 2021, for which violations occurred after November 2, 2015).

44.   The statute further provides that the Attorney General alternatively may recover the amount of any gain to the person committing the violation, or the amount of the loss to a person other than the violator stemming from such conduct, up to the amount of the gain or the loss. *Id*.

45.   The predicate violations identified in Section 951 that can form the basis for liability under FIRREA include, among others: (a) knowingly or willfully making a materially false or fraudulent statement affecting a federally insured financial institution (18 U.S.C. § 1001); (b) making a false statement on a loan application to a financial institution, "the accounts of which are insured by the Federal Deposit Insurance Corporation" (18 U.S.C. § 1014); and (c) knowingly making a false statement for the purpose of influencing a decision by the Administrator of the SBA or to obtain a loan, money, or anything of value under the SBA's 7(a) program, including the PPP (15 U.S.C. § 645(a)).

## FACTUAL BACKGROUND

### I.   Dothan Hospitality

46.   Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

A. <u>First Draw PPP Loan Application</u>

47.    On or before April 3, 2020, Dothan Hospitality applied for a First Draw PPP Loan through Citizens National Bank of Meridian ("Lender"). A copy of Dothan Hospitality's First Draw PPP Loan Application is attached hereto as **Exhibit A**.

48.    As part of its First Draw PPP Loan Application, Dothan Hospitality certified, *inter alia*, that:

    a.    it was eligible to receive a loan under the rules in effect at the time the application was submitted, with which Dothan Hospitality can prove its eligibility, specifically, that it was engaged in a business with a NAICS code that begins with 72, had more than one physical location, and had less than 500 employees per location as detailed in Exhibit A.

    b.    all SBA loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules.

    c.    funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the PPP Rules.

    d.    it would provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the covered period following the loan, with which Dothan Hospitality proved compliance, as illustrated in Exhibit A.

    e.    the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

49.    On April 14, 2020, the Lender approved Dothan Hospitality's First Draw PPP Loan Application.

50.     On April 20, 2020, loan proceeds were disbursed to Dothan Hospitality and deposited into Dothan Hospitality's bank account ending in X-93265.

51.     Dothan Hospitality complied with all certifications in its First Draw PPP Loan Application.

B.  First Draw PPP Loan Forgiveness Application

52.     As such, on November 19, 2020, Dothan Hospitality submitted a forgiveness application for its First Draw PPP Loan (Form 350EZ).

53.     As part of its First Draw PPP Loan Forgiveness application, Dothan Hospitality certified, *inter alia*, that:

a.      the dollar amount for which forgiveness was requested was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments), with which Dothan Hospitality proved compliance, as illustrated in **Exhibit B**, attached hereto;

b.      the dollar amount for which forgiveness was requested included payroll costs equal to at least 60% of the forgiveness amount, with which Dothan Hospitality proved compliance, as illustrated in Exhibit B;

c.      the dollar amount for which forgiveness was requested, for a 24-week Covered Period, did not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual, with which Dothan Hospitality proved compliance, as illustrated in Exhibit B;

d.      the Borrower did not reduce salaries or hourly wages by more than 25 percent for any employee during the Covered Period *(8 weeks)* or Alternative Payroll Covered Period (*24 weeks*) compared to the period between January 1, 2020 and March 31, 2020, with which Dothan Hospitality proved compliance, as illustrated in Exhibit B;

e.    the information provided in the application and the information provided in all supporting documents and forms was true and correct in all material respects and that the applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, with which Dothan Hospitality proved compliance, as illustrated in Exhibit B;

f.    it did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period, with which Dothan Hospitality proved compliance, as illustrated in Exhibit B;

g.    it was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020, by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19, with which Dothan Hospitality proved compliance, as illustrated in Exhibit B.

54.    On December 8, 2020, Dothan Hospitality received notification that its First Draw PPP Loan had been forgiven.

C.    Second Draw PPP Loan Application

55.    On January 12, 2021, Dothan Hospitality applied for a Second Draw PPP Loan through Citizens National Bank of Meridian ("Lender"). A copy of Dothan Hospitality's Second Draw PPP Loan Application is attached hereto as **Exhibit C**.

56.    As part of its Second Draw PPP Loan Application, Dothan Hospitality certified, *inter alia*, that:

a.    it was eligible to receive a loan under the rules in effect at the time the application was submitted, which Dothan Hospitality submitted, proving its eligibility, specifically, that it was a that it was engaged in a business with a NAICS code that begins with 72, had more than one physical location, and had less than 500 employees per location as detailed in Exhibit C.

b.    all loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules.

c.    it had realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period, with which Dothan Hospitality proved compliance, as illustrated in Exhibit C.

d.    the funds would be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules.

e.    the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

57.    On January 22, 2021, the Lender approved Dothan Hospitality's application for a Second Draw PPP Loan.

58.    On March 8, 2021, loan proceeds were disbursed to Dothan Hospitality and deposited into Dothan Hospitality's bank account ending in X-93265.

59.    Dothan Hospitality complied with all certifications in its Second Draw PPP Loan Application.

D. <u>Second Draw PPP Loan Forgiveness Application</u>

60.    As such, on July 19, 2021, Dothan Hospitality submitted a forgiveness application for its Second Draw PPP Loan (Form 3508S).

61.    As part of its Second Draw PPP Loan Forgiveness Application, Dothan Hospitality certified, *inter alia*, that:

a.    That the Borrower complied with all requirements in the PPP Rules, including the rules related to:

- eligible uses of PPP loan proceeds, with which Dothan Hospitality proved compliance, as illustrated in **Exhibit D**, attached hereto;

- the amount of PPP loan proceeds that must be used for payroll costs, with which Dothan Hospitality proved compliance, as illustrated in Exhibit D;

- the calculation and documentation of the Borrower's revenue reduction (if applicable), with which Dothan Hospitality proved compliance, as illustrated in Exhibit D; and

- the calculation of the Borrower's Requested Loan Forgiveness Amount, with which Dothan Hospitality proved compliance, as illustrated in Exhibit D.

b.    That the information provided in this application was true and correct in all material respects and that applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, with which Dothan Hospitality proved compliance, as illustrated in Exhibit D.

62.    On June 30, 2022, Dothan Hospitality received notification that the SBA would not forgive its Second Draw PPP Loan because Dothan Hospitality and its affiliates exceeded the corporate limit for Second Draw PPP Loan forgiveness. Dothan Hospitality timely appealed this decision, and SBA "charged off" the loan as to Dothan Hospitality's Lender, as illustrated in

**Exhibit E**, attached hereto.

63.     Despite the charge off to the Lender, Dothan Hospitality remains liable for the repayment of its Second Draw PPP Loan and interest, because SBA has not provided any correspondence to Dothan Hospitality that its Second Draw PPP Loan is forgiven.

64.     On January 24, 2022, Dothan Hospitality received a CID from Defendant DOJ requesting responses to Interrogatories and production of documents related to its application for PPP loans and loan forgiveness.

65.     As of July 10, 2024, despite having appealed SBA's decision on its Second Draw PPP Loan Forgiveness Application, Dothan Hospitality has not received notification that its Second Draw PPP Loan has been forgiven, presumably due to DOJ's investigation.  As such, an actual case and controversy exists.

**II.     Enterprise Hotels**

66.     Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

A.   First Draw PPP Loan Application

67.     On or before April 3, 2020, Enterprise Hotels applied for a First Draw PPP Loan through Citizens National Bank ("Lender"). A copy of Enterprise Hotels' First Draw PPP Loan Application is attached hereto as **Exhibit F**.

68.     As part of its First Draw PPP Loan application, Enterprise Hotels certified, *inter alia*, that:

a.     it was eligible to receive a loan under the rules in effect at the time the application was submitted, which Enterprise Hotels submitted, proving its eligibility, specifically, that it was engaged in a business with a NAICS code that begins with 72, had more than one physical location, and had less than 500 employees per location as detailed in Exhibit F.

b.      all SBA loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules.

c.      funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the PPP Rules.

d.      it would provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the covered period following the loan, with which Enterprise Hotels proved compliance, as illustrated in Exhibit F.

e.      the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

69.    On February 13, 2020, the Lender approved Enterprise Hotels' application.

70.    On February 24, 2021, loan proceeds were disbursed to Enterprise Hotels and deposited into Enterprise Hotels' bank account ending in X-08218.

71.    Enterprise Hotels complied with all certifications in its First Draw PPP Loan Application.

B.  First Draw PPP Loan Forgiveness Application

72.    On November 19, 2020, Enterprise Hotels submitted a forgiveness application for its First Draw PPP Loan (Form 3508EZ).

73.    As part of its First Draw PPP Loan Forgiveness application, Enterprise Hotels certified, *inter alia*, that:

a.      the dollar amount for which forgiveness was requested was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest

payments; business rent or lease payments; or business utility payments), with which Enterprise Hotels proved compliance, as illustrated in **Exhibit G**, attached hereto;

b.    the dollar amount for which forgiveness was requested included payroll costs equal to at least 60% of the forgiveness amount, with which Enterprise Hotels proved compliance, as illustrated in Exhibit G;

c.    the dollar amount for which forgiveness was requested, for a 24-week Covered Period, did not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual, with which Enterprise Hotels proved compliance, as illustrated in Exhibit G;

d.    the Borrower did not reduce salaries or hourly wages by more than 25 percent for any employee during the Covered Period *(8 weeks)* or Alternative Payroll Covered Period (*24 weeks*) compared to the period between January 1, 2020 and March 31, 2020, with which Enterprise Hotels proved compliance, as illustrated in Exhibit G;

e.    the information provided in the application and the information provided in all supporting documents and forms was true and correct in all material respects and that the applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, with which Enterprise Hotels proved compliance, as illustrated in Exhibit G;

f.    it did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period, with which Enterprise Hotels proved compliance, as illustrated in Exhibit G;

g.    it was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and

December 31, 2020, by the Secretary of Health and Human Services, the Director of the Centers

for Disease Control and Prevention, or the Occupational Safety and Health Administration, related

to the maintenance of standards of sanitation, social distancing, or any other work or customer

safety requirement related to COVID-19, with which Enterprise Hotels proved compliance, as

illustrated in Exhibit G.

74.    On December 18, 2020, Enterprise Hotels received notification that its First Draw

PPP Loan had been forgiven.

C. Second Draw PPP Loan Application

75.    On January 12, 2021, Enterprise Hotels applied for a Second Draw PPP Loan

through Citizens National Bank of Meridian ("Lender"). A copy of Enterprise Hotels' Second

Draw PPP Loan Application is attached hereto as **Exhibit H**.

76.    As part of its First Draw PPP Loan Application, Enterprise Hotels certified, *inter*

*alia*, that:

a.    it was eligible to receive a loan under the rules in effect at the time the

application was submitted, which Enterprise Hotels submitted, proving its eligibility, specifically,

that it was engaged in a business with a NAICS code that begins with 72, had more than one

physical location, and had less than 500 employees per location as detailed in Exhibit H.

b.    all loan proceeds would be used only for business-related purposes as

specified in the loan application and consistent with the PPP Rules.

c.    it had realized a reduction in gross receipts in excess of 25% relative to the

relevant comparison time period, with which Enterprise Hotels proved compliance, as illustrated

in Exhibit H.

d.    the funds would be used to retain workers and maintain payroll; or make

payments for mortgage interest, rent, utilities, covered operations expenditures, covered property

damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules.

e.    the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

77.    On January 21, 2021, the Lender approved Enterprise Hotels' Second Draw PPP Loan Application.

78.    On February 3, 2021, loan proceeds were disbursed to Enterprise Hotels and deposited into Enterprise Hotels' bank account ending in X-08218.

79.    Enterprise Hotels complied with all certifications in its Second Draw PPP Loan Application.

D.    Second Draw PPP Loan Forgiveness Application

80.    On July 19, 2021, Enterprise Hotels submitted a forgiveness application for its Second Draw PPP Loan (Form 3508S).

81.    As part of its Second Draw PPP Loan Forgiveness Application, Enterprise Hotels certified, *inter alia*, that:

a.    That the Borrower complied with all requirements in the PPP Rules, including the rules related to:

- eligible uses of PPP loan proceeds, with which Enterprise Hotels proved compliance, as illustrated in **Exhibit I**, attached hereto;

- the amount of PPP loan proceeds that must be used for payroll costs, with which Enterprise Hotels proved compliance, as illustrated in Exhibit I;

- the calculation and documentation of the Borrower's revenue reduction (if applicable), with which Enterprise Hotels proved compliance, as illustrated in Exhibit I; and

•       the calculation of the Borrower's Requested Loan Forgiveness Amount, with which Enterprise Hotels proved compliance, as illustrated in Exhibit I.

b.       That the information provided in this application was true and correct in all material respects and that applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, with which Enterprise Hotels proved compliance, as illustrated in Exhibit I.

82.       Enterprise Hotels received notification from SBA that its Second Draw PPP Loan Forgiveness Application had been denied.  Enterprise Hotels timely appealed this decision, and SBA "charged off" the loan as to Enterprise Hotels' Lender, as illustrated in **Exhibit J**, attached hereto.

83.       Despite the charge off to the Lender, Enterprise Hotels remains liable for the repayment of its Second Draw PPP Loan and interest, because SBA has not provided any correspondence to Enterprise Hotels that its Second Draw PPP Loan is forgiven.

84.       On January 24, 2022, Enterprise Hotels received a CID from Defendant DOJ requesting responses to Interrogatories and production of documents related to its application for PPP loans and loan forgiveness.

85.       As of July 10, 2024, despite having appealed the SBA's denial of its Second Draw PPP Loan Forgiveness Application, Enterprise Hotels has not received a notification that its Second Draw PPP Loan has been forgiven, presumably due to DOJ's investigation.  As such, an actual case and controversy exists.

III.    **Enterprise Hospitality**

86.       Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

A.  First Draw PPP Loan Application

87.    On or before April 3, 2020, Enterprise Hospitality applied for a First Draw PPP Loan through Citizens National Bank ("Lender"). A copy of Enterprise Hospitality's First Draw PPP Loan Application is attached hereto as **Exhibit K**.

88.    As part of its First Draw PPP Loan Application, Enterprise Hospitality certified, *inter alia*, that:

a.    it was eligible to receive a loan under the rules in effect at the time the application was submitted, which Enterprise Hospitality submitted, proving its eligibility, specifically, that it was engaged in a business with a NAICS code that begins with 72, had more than one physical location, and had less than 500 employees per location as detailed in Exhibit K.

b.    all SBA loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules.

c.    funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the PPP Rules.

d.    it would provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the covered period following the loan, with which Enterprise Hospitality proved compliance, as illustrated in Exhibit K.

e.    the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

89.    On April 13, 2020, the Lender approved Enterprise Hospitality's application.

90.    On April 20, 2020, loan proceeds were disbursed to Enterprise Hospitality and deposited into Enterprise Hospitality's bank account ending in X-32344.

91.    Enterprise Hospitality complied with all certifications in its First Draw PPP Loan Application.

B.  First Draw PPP Loan Forgiveness Application

92.    On November 19, 2020, Enterprise Hospitality submitted a forgiveness application for its First Draw PPP Loan (Form 3508EZ).

93.    As part of its First Draw PPP Loan Forgiveness Application, Enterprise Hospitality certified, *inter alia*, that:

a.    the dollar amount for which forgiveness was requested was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments), with which Enterprise Hospitality proved compliance, as illustrated in **Exhibit L**, attached hereto;

b.    the dollar amount for which forgiveness was requested included payroll costs equal to at least 60% of the forgiveness amount, with which Enterprise Hospitality proved compliance, as illustrated in Exhibit L;

c.    the dollar amount for which forgiveness was requested, for a 24-week Covered Period, did not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual, with which Enterprise Hospitality proved compliance, as illustrated in Exhibit L;

d.    the Borrower did not reduce salaries or hourly wages by more than 25 percent for any employee during the Covered Period *(8 weeks)* or Alternative Payroll Covered Period (*24 weeks*) compared to the period between January 1, 2020 and March 31, 2020, with which Enterprise Hospitality proved compliance, as illustrated in Exhibit L;

e.       the information provided in the application and the information provided in all supporting documents and forms was true and correct in all material respects and that the applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, with which Enterprise Hospitality proved compliance, as illustrated in Exhibit L;

f.       it did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period, with which Enterprise Hospitality proved compliance, as illustrated in Exhibit L;

94.     it was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020, by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19, with which Enterprise Hospitality proved compliance, as illustrated in Exhibit L.

95.     On December 8, 2020, Enterprise Hospitality received notification that its First Draw PPP Loan had been forgiven.

C.  Second Draw PPP Loan Application

96.     On January 12 ,2021, Enterprise Hospitality applied for a Second Draw PPP Loan through Citizens National Bank of Meridian ("Lender"). A copy of Enterprise Hospitality's Second PPP Loan Application is attached hereto as **Exhibit M**.

97.     As part of its Second Draw PPP Loan Application, Enterprise Hospitality certified, *inter alia*, that:

a.      it was eligible to receive a loan under the rules in effect at the time the application was submitted, which Enterprise Hospitality submitted, proving its eligibility, specifically, that it was engaged in a business with a NAICS code that begins with 72, had more than one physical location, and had less than 500 employees per location as detailed in Exhibit M.

b.      all loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules.

c.      it had realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period, with which Enterprise Hospitality proved compliance, as illustrated in Exhibit M.

d.      the funds would be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules.

e.      the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

98.     On January 23, 2021, the Lender approved Enterprise Hospitality's application.

99.     On February 1, 2021, loan proceeds were disbursed to Enterprise Hospitality and deposited into Enterprise Hospitality's bank account ending in X-32344.

100.    Enterprise Hospitality complied with all certifications in its First Draw PPP Loan Application.

D.   Second Draw PPP Loan Forgiveness Application

101.    On July 19, 2021, Enterprise Hospitality submitted a forgiveness application for its Second Draw PPP Loan (Form 3508S).

102.    As part of its Second Draw PPP Loan Forgiveness Application, Enterprise Hospitality certified, *inter alia*, that:

a.    That the Borrower complied with all requirements in the PPP Rules, including the rules related to:

- eligible uses of PPP loan proceeds, with which Enterprise Hospitality proved compliance, as illustrated in **Exhibit N**, attached hereto;

- the amount of PPP loan proceeds that must be used for payroll costs, with which Enterprise Hospitality proved compliance, as illustrated in Exhibit N;

- the calculation and documentation of the Borrower's revenue reduction (if applicable), with which Enterprise Hospitality proved compliance, as illustrated in Exhibit N; and

- the calculation of the Borrower's Requested Loan Forgiveness Amount, with which Enterprise Hospitality proved compliance, as illustrated in Exhibit N.

b.    That the information provided in this application was true and correct in all material respects and that applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, with which Enterprise Hospitality proved compliance, as illustrated in Exhibit N.

103.    On July 26, 2021, Enterprise Hospitality received notification that its Second Draw PPP Loan had been forgiven.

104.    Despite SBA forgiving Enterprise Hospitality's First and Second PPP loans, Enterprise Hospitality received a CID from Defendant DOJ requesting responses to Interrogatories and production of documents related to its application for PPP loans and loan forgiveness. As such, Enterprise Hospitality is under active investigation from DOJ, and an actual case and controversy exists.

IV.    **Hope Hull**

105.    Hope Hull repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

A.    First Draw PPP Loan Application

106.    On or before April 3, 2020, Hope Hull applied for a First Draw PPP Loan through Citizens National Bank of Meridian ("Lender"). A copy of Hope Hull's First Draw PPP Loan Application is attached hereto as **Exhibit O**.

107.    As part of its First Draw PPP Loan Application, Hope Hull certified, *inter alia*, that:

a.    it was eligible to receive a loan under the rules in effect at the time the application was submitted, proving its eligibility, specifically, that it was engaged in a business with a NAICS code that begins with 72, had more than one physical location, and had less than 500 employees per location as detailed in Exhibit O.

b.    all SBA loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules.

c.    funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the PPP Rules.

d.    it would provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the covered period following the loan, with which Hope Hull proved compliance, as illustrated in Exhibit O.

e.    the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

108.    On April 11, 2020, the Lender approved Hope Hull's application.

109.    On April 20, 2020, loan proceeds were disbursed to Hope Hull and deposited into Hope Hull's bank account ending in X-22521.

110.    Hope Hull complied with all certifications in its First Draw PPP Loan Application.

B.  First Draw PPP Loan Forgiveness Application

111.    On November 20, 2020, Hope Hull submitted a forgiveness application for its First Draw PPP Loan (Form 3508EZ).

112.    As part of its First Draw PPP Loan Forgiveness application, Hope Hull certified, *inter alia*, that:

a.    the dollar amount for which forgiveness was requested was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments), with which Hope Hull proved compliance, as illustrated in **Exhibit P**, attached hereto;

b.    the dollar amount for which forgiveness was requested included payroll costs equal to at least 60% of the forgiveness amount, with which Hope Hull proved compliance, as illustrated in Exhibit P;

c.    the dollar amount for which forgiveness was requested, for a 24-week Covered Period, did not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual, with which Hope Hull proved compliance, as illustrated in Exhibit P;

d.    the Borrower did not reduce salaries or hourly wages by more than 25 percent for any employee during the Covered Period *(8 weeks)* or Alternative Payroll Covered Period (*24 weeks*) compared to the period between January 1, 2020 and March 31, 2020, with which Hope Hull proved compliance, as illustrated in Exhibit P;

e.     the information provided in the application and the information provided in all supporting documents and forms was true and correct in all material respects and that the applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, with which Hope Hull proved compliance, as illustrated in Exhibit P;

f.     it did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period, with which Hope Hull proved compliance, as illustrated in Exhibit P;

g.     it was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020, by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19, with which Hope Hull proved compliance, as illustrated in Exhibit P.

113.    On December 8, 2020, Hope Hull received notification that its First Draw PPP Loan had been forgiven.

C.    Second Draw PPP Loan Application

114.    On January 12, 2021, Hope Hull applied for a Second Draw PPP Loan through Citizens National Bank of Meridian ("Lender"). A copy of Hope Hull's Second Draw PPP Loan Application is attached hereto as **Exhibit Q**.

115.    As part of its Second Draw PPP Loan Application, Hope Hull certified, *inter alia*, that:

a.      it was eligible to receive a loan under the rules in effect at the time the application was submitted, which Hope Hull submitted, proving its eligibility, specifically, that it was engaged in a business with a NAICS code that begins with 72, had more than one physical location, and had less than 500 employees per location as detailed in Exhibit Q.

b.      all loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules.

c.      it had realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period, with which Hope Hull proved compliance, as illustrated in Exhibit Q.

d.      the funds would be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules.

e.      the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

116.    On January 25, 2021, the Lender approved Hope Hull's application.

117.    On February 1, 2021, loan proceeds were disbursed to Hope Hull and deposited into Hope Hull's bank account ending in X-22521.

118.    Hope Hull complied with all certifications in its Second Draw PPP Loan Application.

D.  Second Draw PPP Loan Forgiveness Application

119.    On July 19, 2021, Hope Hull submitted a forgiveness application for its Second Draw PPP Loan (Form 3508S).

120.    As part of its Second Draw PPP Loan Forgiveness Application, Hope Hull certified that:

a.    the dollar amount for which forgiveness was requested was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments), with which Hope Hull proved compliance, as illustrated in **Exhibit R**, attached hereto;

b.    the dollar amount for which forgiveness was requested included payroll costs equal to at least 60% of the forgiveness amount, with which Hope Hull proved compliance, as illustrated in Exhibit R;

c.    the dollar amount for which forgiveness was requested, for a 24-week Covered Period, did not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual, with which Hope Hull proved compliance, as illustrated in Exhibit R;

d.    the Borrower did not reduce salaries or hourly wages by more than 25 percent for any employee during the Covered Period *(8 weeks)* or Alternative Payroll Covered Period (*24 weeks*) compared to the period between January 1, 2020 and March 31, 2020, with which Hope Hull proved compliance, as illustrated in Exhibit R;

e.    the information provided in the application and the information provided in all supporting documents and forms was true and correct in all material respects and that the applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, with which Hope Hull proved compliance, as illustrated in Exhibit R;

f.    it did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period, with which Hope Hull

proved compliance, as illustrated in Exhibit R;

g.    it was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020, by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19, with which Hope Hull proved compliance, as illustrated in Exhibit R.

121.    Hope Hull received notification from SBA that its Second Draw PPP Loan Forgiveness Application had been denied. Hope Hull timely appealed this decision, and SBA "charged off" the loan as to Hope Hull's Lender, as illustrated in **Exhibit S**, attached hereto.

122.    Despite the charge off to the Lender, Hope Hull remains liable for the repayment of its Second Draw PPP Loan and interest, because SBA has not provided any correspondence to Hope Hull that its Second Draw PPP Loan has been forgiven.

123.    On January 24, 2022, Hope Hull received a CID from Defendant DOJ requesting responses to Interrogatories and production of documents related to its application for PPP loans and loan forgiveness.

124.    As of July 10, 2024, despite having appealed the SBA's denial of its Second Draw PPP Loan Forgiveness Application, Hope Hull has not received a notification that its Second Draw PPP Loan has been forgiven, presumably due to DOJ's investigation.  As such, an actual case and controversy exists.

## V.    Montgomery Downtown

121.    Montgomery Downtown repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

### A.  First Draw PPP Loan Application

122.    On or before April 3, 2020, Montgomery Downtown applied for a First Draw PPP Loan through Citizens National Bank of Meridian ("Lender"). A copy of Montgomery Downtown's First Draw PPP Loan Application is attached hereto as **Exhibit T**.

123.    As part of its First Draw PPP Loan Application, Montgomery Downtown certified, *inter alia*, that:

a.    it was eligible to receive a loan under the rules in effect at the time the application was submitted, with which Montgomery Downtown can prove compliance, specifically, that it was engaged in a business with a NAICS code that begins with 72, had more than one physical location, and had less than 500 employees per location as detailed in Exhibit T.

b.    all SBA loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules.

c.    funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the PPP Rules.

d.    it would provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the covered period following the loan, with which Montgomery Downtown proved compliance, as illustrated in Exhibit T.

e.      the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

124.    On April 11, 2020, the Lender approved Montgomery Downtown's application.

125.    On April 20, 2020, loan proceeds were disbursed to Montgomery Downtown and deposited into Montgomery Downtown's bank account ending in X-22955.

126.    Montgomery Downtown complied with all certifications in its First Draw PPP Loan Application.

B.   First Draw PPP Loan Forgiveness Application

127.    On November 20, 2020, Montgomery Downtown submitted a forgiveness application for its First Draw PPP Loan (Form 3508EZ).

128.    As part of its First Draw PPP Loan Forgiveness Application, Montgomery Downtown certified, *inter alia*, that:

a.      the dollar amount for which forgiveness was requested was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments), with which Montgomery Downtown proved compliance, as illustrated in **Exhibit U**, attached hereto;

b.      the dollar amount for which forgiveness was requested included payroll costs equal to at least 60% of the forgiveness amount, with which Montgomery Downtown proved compliance, as illustrated in Exhibit U;

c.      the dollar amount for which forgiveness was requested, for a 24-week Covered Period, did not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual, with which Montgomery Downtown proved compliance, as illustrated in Exhibit U;

d.      the Borrower did not reduce salaries or hourly wages by more than 25 percent for any employee during the Covered Period *(8 weeks)* or Alternative Payroll Covered Period (*24 weeks*) compared to the period between January 1, 2020 and March 31, 2020, with which Montgomery Downtown proved compliance, as illustrated in Exhibit U;

e.      the information provided in the application and the information provided in all supporting documents and forms was true and correct in all material respects and that the applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, with which Montgomery Downtown proved compliance, as illustrated in Exhibit U;

f.      it did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period, with which Montgomery Downtown proved compliance, as illustrated in Exhibit U; and

g.      it was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020, by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19, with which Montgomery Downtown proved compliance, as illustrated in Exhibit U.

129.    On December 8, 2020, Montgomery Downtown received notification that its First Draw PPP Loan had been forgiven.

C. Second Draw PPP Loan Application

130. On January 12, 2021, Montgomery Downtown applied for a Second Draw PPP Loan through Citizens National Bank of Meridian ("Lender"). A copy of Montgomery Downtown's Second Draw PPP Loan Application is attached hereto as **Exhibit V**.

131. As part of its Second Draw PPP Loan Application, Montgomery Downtown certified, *inter alia*, that:

      a. it was eligible to receive a loan under the rules in effect at the time the application was submitted, which Montgomery Downtown submitted, proving its eligibility, specifically, that it was engaged in a business with a NAICS code that begins with 72, had more than one physical location, and had less than 500 employees per location as detailed in Exhibit V.

      b. all loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules.

      c. it had realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period, with which Montgomery Downtown proved compliance, as illustrated in Exhibit V.

      d. the funds would be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules.

      e. the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects..

132. On January 21, 2021, the Lender approved Montgomery Downtown's application.

133. On February 1, 2021, loan proceeds were disbursed to Montgomery Downtown and deposited into Montgomery Downtown's bank account ending in X-22955.

134.    Montgomery Downtown complied with all certifications in its Second Draw PPP Loan Application.

D.  Second Draw PPP Loan Forgiveness Application

135.    On August 2, 2021, Montgomery Downtown submitted a forgiveness application for its Second Draw PPP Loan (Form 3508EZ).

136.    As part of its Second Draw PPP Loan Forgiveness Application, Montgomery Downtown certified, *inter alia*, that:

a.    the dollar amount for which forgiveness was requested:

(i)    was used to pay business costs that were eligible for forgiveness, with which Montgomery Downtown proved compliance, as illustrated in **Exhibit W**, attached hereto;

(ii)    included payroll costs equal to at least 60% of the forgiveness amount, with which Montgomery Downtown proved compliance, as illustrated in Exhibit W;

(iii)    did not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual in total across all businesses, during the year used to calculate the PPP loan amount, with which Montgomery Downtown proved compliance, as illustrated in Exhibit W;

b.    the Borrower did not reduce salaries or hourly wages of any employee by more than 25 percent for any employee during the Covered Period compared to the most recent quarter before the Covered Period, with which Montgomery Downtown proved compliance, as illustrated in Exhibit W;

c.    the Borrower submitted to the Lender the required documentation verifying payroll costs, the existence of obligations and service (as applicable) prior to February 15, 2020, and eligible business mortgage interest payments, business rent or lease payments, business utility payments, covered operations expenditures, covered property damage costs, covered supplier

costs, and covered worker protection expenditures, with which Montgomery Downtown proved compliance, as illustrated in Exhibit W;

  d. the information provided in the application and the information provided in all supporting documents and forms was true and correct in all material respects;

  e. the Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period, with which Montgomery Downtown proved compliance, as illustrated in Exhibit W; and

  f. the Borrower was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020, by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19, with which Montgomery Downtown proved compliance, as illustrated in Exhibit W.

137. On April 28, 2022, Montgomery Downtown received notification that SBA required more information to determine the forgiveness of its Second Draw PPP Loan. Despite Montgomery Downtown providing the requested information, SBA has not forgiven Montgomery Downtown's Second Draw PPP Loan to date. SBA has, however, "charged off" the loan as to Montgomery Downtown's Lender, as illustrated in **Exhibit X**, attached hereto.

138. Despite the charge off to the Lender, Montgomery Downtown remains liable for the repayment of its Second Draw PPP Loan and interest, because SBA has not provided any correspondence to Montgomery Downtown that its Second Draw PPP Loan is forgiven.

139.    On January 24, 2022, Montgomery Downtown received a CID from Defendant DOJ requesting responses to Interrogatories and production of documents related to its application for PPP loans and loan forgiveness.

140.    As of July 10, 2024, despite having provided SBA all the requested documents regarding its Second Draw PPP Loan Forgiveness Application, Montgomery Downtown has not received a final determination regarding its Second Draw PPP Loan Forgiveness Application, presumably due to DOJ's investigation.  As such, an actual case and controversy exists.

## VI.    Montgomery Hospitality

141.    Montgomery Hospitality repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

A.    First Draw PPP Loan Application

142.    On or before April 3, 2020, Montgomery Hospitality applied for a First Draw PPP Loan through Citizens National Bank of Meridian ("Lender").  A copy of Montgomery Hospitality's First Draw PPP Loan Application is attached hereto as **Exhibit Y**.

143.    As part of its First Draw PPP Loan Application, Montgomery Hospitality certified, *inter alia*, that:

a.    it was eligible to receive a loan under the rules in effect at the time the application was submitted, with which Montgomery Hospitality can prove compliance, specifically, that it was engaged in a business with a NAICS code that begins with 72, had more than one physical location, and had less than 500 employees per location as detailed in Exhibit Y.

b.    all SBA loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules.

c.    funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the PPP

Rules.

d.      it would provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the covered period following the loan, with which Montgomery Hospitality proved compliance, as illustrated in Exhibit Y.

e.      the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

144.    On April 11, 2020, the Lender approved Montgomery Hospitality's application.

145.    On April 20, 2020, loan proceeds were disbursed to Montgomery Hospitality and deposited into Montgomery Hospitality's bank account ending in X-92857.

146.    Montgomery Hospitality complied with all certifications in its First Draw PPP Loan Application.

B.      First Draw PPP Loan Forgiveness Application

147.    On November 20, 2020, Montgomery Hospitality submitted a forgiveness application for its First Draw PPP Loan (Form 3508EZ).

148.    As part of its First Draw PPP Loan Forgiveness Application, Montgomery Hospitality certified, *inter alia*, that:

a.      the dollar amount for which forgiveness was requested was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments), with which Montgomery Hospitality proved compliance, as illustrated in **Exhibit Z**, attached hereto;

b.      the dollar amount for which forgiveness was requested included payroll costs equal to at least 60% of the forgiveness amount, with which Montgomery Hospitality proved

compliance, as illustrated in Exhibit Z;

c.      the dollar amount for which forgiveness was requested, for a 24-week Covered Period, did not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual, with which Montgomery Hospitality proved compliance, as illustrated in Exhibit Z;

d.      the Borrower did not reduce salaries or hourly wages by more than 25 percent for any employee during the Covered Period *(8 weeks)* or Alternative Payroll Covered Period (*24 weeks*) compared to the period between January 1, 2020 and March 31, 2020, with which Montgomery Hospitality proved compliance, as illustrated in Exhibit Z;

e.      the information provided in the application and the information provided in all supporting documents and forms was true and correct in all material respects and that the applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, with which Montgomery Hospitality proved compliance, as illustrated in Exhibit Z;

f.      it did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period, with which Montgomery Hospitality proved compliance, as illustrated in Exhibit Z;

g.      it was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020, by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19, with which Montgomery Hospitality proved compliance,

as illustrated in Exhibit Z.

149.    On November 27, 2020, Montgomery Hospitality received notification that its First Draw PPP Loan had been forgiven.

C.    Second Draw PPP Loan Application

150.    On January 12, 2021, Montgomery Hospitality applied for a Second Draw PPP Loan through Citizens National Bank of Meridian ("Lender"). A copy of Montgomery Hospitality's Second Draw PPP Loan Application is attached hereto as **Exhibit AA**.

151.    As part of its Second Draw PPP Loan Application, Montgomery Hospitality certified, *inter alia*, that:

a.    it was eligible to receive a loan under the rules in effect at the time the application was submitted, which Montgomery Hospitality submitted, proving its eligibility, specifically, that it was engaged in a business with a NAICS code that begins with 72, had more than one physical location, and had less than 500 employees per location as detailed in Exhibit AA.

b.    all loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules.

c.    it had realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period, with which Montgomery Hospitality proved compliance, as illustrated in Exhibit AA.

d.    the funds would be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules.

e.    the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

152.    On January 22, 2021, the Lender approved Montgomery Hospitality's application.

153.    On February 3, 2021, loan proceeds were disbursed to Montgomery Hospitality and deposited into Montgomery Hospitality's bank account ending in X-92857.

154.    Montgomery Hospitality complied with all certifications in its Second Draw PPP Loan Application.

D.    Second Draw PPP Loan Forgiveness Application

155.    On July 21, 2021, Montgomery Hospitality submitted a forgiveness application for its Second Draw PPP Loan (Form 3508S).

125.    As part of its Second Draw PPP Loan Forgiveness Application, Montgomery Hospitality certified, *inter alia*, that:

a.    That the Borrower complied with all requirements in the PPP Rules, including the rules related to:

•    eligible uses of PPP loan proceeds, with which Montgomery Hospitality proved compliance, as illustrated in **Exhibit BB**, attached hereto;

•    the amount of PPP loan proceeds that must be used for payroll costs, with which Montgomery Hospitality proved compliance, as illustrated in Exhibit BB;

•    the calculation and documentation of the Borrower's revenue reduction (if applicable), with which Montgomery Hospitality proved compliance, as illustrated in Exhibit BB; and

•    the calculation of the Borrower's Requested Loan Forgiveness Amount, with which Montgomery Hospitality proved compliance, as illustrated in Exhibit BB.

b. That the information provided in this application was true and correct in all material respects and that applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, with which Montgomery Hospitality proved compliance, as illustrated in Exhibit BB.

156. On July 27, 2021, Montgomery Hospitality received notification that its Second Draw PPP Loan had been forgiven.

157. Despite SBA forgiving Montgomery Hospitality's First and Second Draw PPP loans, Mongomery Hospitality received a CID from Defendant DOJ requesting responses to Interrogatories and production of documents related to its application for PPP loans and loan forgiveness. As such, Montgomery Hospitality is under active investigation from DOJ, and an actual case and controversy exists.

**VII.    P&T Hospitality**

158. P&T Hospitality repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

A. First Draw PPP Loan Application

159. On or before April 3, 2020, P&T Hospitality applied for a First Draw PPP Loan through Citizens National Bank of Meridian ("Lender"). A copy of P&T Hospitality's First Draw PPP Loan Application is attached hereto as **Exhibit CC**.

160. As part of its First Draw PPP Loan Application, P&T Hospitality certified, *inter alia*, that:

a. it was eligible to receive a loan under the rules in effect at the time the application was submitted, with which P&T Hospitality can prove compliance, specifically, that it was engaged in a business with a NAICS code that begins with 72, had more than one physical location, and had less than 500 employees per location as detailed in Exhibit CC.

b.      all SBA loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules.

c.      funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the PPP Rules.

d.      it would provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the covered period following the loan, with which P&T Hospitality proved compliance, as illustrated in Exhibit CC.

e.      the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

161.    On April 14, 2020, the Lender approved P&T Hospitality's application.

162.    On April 20, 2020, loan proceeds were disbursed to P&T Hospitality and deposited into P&T Hospitality's bank account ending in X-34808.

163.    P&T Hospitality complied with all certifications in its First Draw PPP Loan Application.

B.  First Draw PPP Loan Forgiveness Application

164.    On November 20, 2020, P&T Hospitality submitted a forgiveness application for its First Draw PPP Loan (Form 3508EZ).

165.    As part of its First Draw PPP Loan Forgiveness application, P&T Hospitality certified, *inter alia*, that:

a.      the dollar amount for which forgiveness was requested was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest

payments; business rent or lease payments; or business utility payments), with which P&T Hospitality proved compliance, as illustrated in **Exhibit DD**, attached hereto;

b.     the dollar amount for which forgiveness was requested included payroll costs equal to at least 60% of the forgiveness amount, with which P&T Hospitality proved compliance, as illustrated in Exhibit DD;

c.     the dollar amount for which forgiveness was requested, for a 24-week Covered Period, did not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual, with which P&T Hospitality proved compliance, as illustrated in Exhibit DD;

d.     the Borrower did not reduce salaries or hourly wages by more than 25 percent for any employee during the Covered Period *(8 weeks)* or Alternative Payroll Covered Period (*24 weeks*) compared to the period between January 1, 2020 and March 31, 2020, with which P&T Hospitality proved compliance, as illustrated in Exhibit DD;

e.     the information provided in the application and the information provided in all supporting documents and forms was true and correct in all material respects and that the applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, with which P&T Hospitality proved compliance, as illustrated in Exhibit DD;

f.     it did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period, with which P&T Hospitality proved compliance, as illustrated in Exhibit DD;

g.     it was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and

December 31, 2020, by the Secretary of Health and Human Services, the Director of the Centers

for Disease Control and Prevention, or the Occupational Safety and Health Administration, related

to the maintenance of standards of sanitation, social distancing, or any other work or customer

safety requirement related to COVID-19, with which P&T Hospitality proved compliance, as

illustrated in Exhibit DD.

166.    On December 8, 2020, P&T Hospitality received notification that its First Draw

PPP Loan had been forgiven.

C.  Second Draw PPP Loan Application

167.    On January 12, 2021, P&T Hospitality applied for a Second Draw PPP Loan

through Citizens National Bank of Meridian ("Lender"). A copy of P& T Hospitality's Second

Draw PPP Loan Application is attached hereto as **Exhibit EE**.

168.    As part of its Second Draw PPP Loan Application, P&T Hospitality certified, *inter*

*alia*, that:

        a.    it was eligible to receive a loan under the rules in effect at the time the

application was submitted, which P&T Hospitality submitted, proving its eligibility, specifically,

was engaged in a business with a NAICS code that begins with 72, had more than one physical

location, and had less than 500 employees per location as detailed in Exhibit EE.

        b.    all loan proceeds would be used only for business-related purposes as

specified in the loan application and consistent with the PPP Rules.

        c.    it had realized a reduction in gross receipts in excess of 25% relative to the

relevant comparison time period, with which P&T Hospitality proved compliance, as illustrated in

Exhibit EE.

        d.    the funds would be used to retain workers and maintain payroll; or make

payments for mortgage interest, rent, utilities, covered operations expenditures, covered property

damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules.

e.    the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

169.    On January 22, 2021, the Lender approved P&T Hospitality's application.

170.    On February 1, 2021, loan proceeds were disbursed to P&T Hospitality and deposited into P&T Hospitality's bank account ending in X-34808.

171.    P&T Hospitality complied with all certifications in its Second Draw PPP Loan Application.

D.    Second Draw PPP Loan Forgiveness Application

172.    On August 5, 2021, P&T Hospitality submitted a forgiveness application for its Second Draw PPP Loan (Form 3508EZ).

173.    As part of its Second Draw PPP Loan Forgiveness Application, P&T Hospitality certified, *inter alia*, that:

a.    the dollar amount for which forgiveness was requested:

(i)    was used to pay business costs that were eligible for forgiveness, with which P&T Hospitality proved compliance, as illustrated in **Exhibit FF**, attached hereto;

(ii)    included payroll costs equal to at least 60% of the forgiveness amount, with which P&T Hospitality proved compliance, as illustrated in Exhibit FF;

(iii)    did not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual in total across all businesses, during the year used to calculate the PPP loan amount, with which P&T Hospitality proved compliance, as illustrated in Exhibit FF;

b.      the Borrower did not reduce salaries or hourly wages of any employee by more than 25 percent for any employee during the Covered Period compared to the most recent quarter before the Covered Period, with which P&T Hospitality proved compliance, as illustrated in Exhibit FF;

c.      the Borrower submitted to the Lender the required documentation verifying payroll costs, the existence of obligations and service (as applicable) prior to February 15, 2020, and eligible business mortgage interest payments, business rent or lease payments, business utility payments, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures, with which P&T Hospitality proved compliance, as illustrated in Exhibit FF;

d.      the information provided in the application and the information provided in all supporting documents and forms was true and correct in all material respects;

e.      the Borrower did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period, with which P&T Hospitality proved compliance, as illustrated in Exhibit FF; and

f.      the Borrower was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020, by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19, with which P&T Hospitality proved compliance, as illustrated in Exhibit FF.

174.    On August 12, 2021, P&T Hospitality received notification that its Second Draw PPP Loan had been forgiven.

175.    Despite SBA forgiving P&T Hospitality's First and Second Draw PPP Loans, P&T Hospitality received a CID from Defendant DOJ requesting responses to Interrogatories and production of documents related to its application for PPP loans and loan forgiveness. As such, P&T Hospitality is under active investigation from DOJ, and an actual case and controversy exists.

## VIII.   Vision Hospitality

176.    Vision Hospitality repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

### A.   First Draw PPP Loan Application

177.    On or before April 3, 2020, Vision Hospitality applied for a First Draw PPP Loan through Citizens National Bank of Meridian ("Lender"). A copy of Vision Hospitality's First Draw PPP Loan Application is attached hereto as **Exhibit GG**.

178.    As part of its First Draw PPP Loan Application, Vision Hospitality certified, *inter alia*, that:

a.    it was eligible to receive a loan under the rules in effect at the time the application was submitted, with which Vision Hospitality can prove compliance, specifically, that it was engaged in a business with a NAICS code that begins with 72, had more than one physical location, and had less than 500 employees per location as detailed in Exhibit GG.

b.    all SBA loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules.

c.    funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the PPP

Rules.

    d.    it would provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the covered period following the loan, with which Vision Hospitality proved compliance, as illustrated in Exhibit GG.

    e.    the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

    179.    On April 14, 2020, the Lender approved Vision Hospitality's application.

    180.    On April 20, 2020, loan proceeds were disbursed to Vision Hospitality and deposited into Vision Hospitality's bank account ending in X-93117.

    181.    Vision Hospitality complied with all certifications in its First Draw PPP Loan Application.

B.  First Draw PPP Loan Forgiveness Application

    182.    On November 20, 2020, Vision Hospitality submitted a forgiveness application for its First Draw PPP Loan (Form 3508EZ).

    183.    As part of its First Draw PPP Loan Forgiveness application, Vision Hospitality certified, *inter alia*, that:

    a.    the dollar amount for which forgiveness was requested was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments), with which Vision Hospitality proved compliance, as illustrated in **Exhibit HH**, attached hereto;

    b.    the dollar amount for which forgiveness was requested included payroll costs equal to at least 60% of the forgiveness amount, with which Vision Hospitality proved

compliance, as illustrated in Exhibit HH;

       c.     the dollar amount for which forgiveness was requested, for a 24-week Covered Period, did not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual, with which Vision Hospitality proved compliance, as illustrated in Exhibit HH;

       d.     the Borrower did not reduce salaries or hourly wages by more than 25 percent for any employee during the Covered Period *(8 weeks)* or Alternative Payroll Covered Period (*24 weeks*) compared to the period between January 1, 2020 and March 31, 2020, with which Vision Hospitality proved compliance, as illustrated in Exhibit HH;

       e.     the information provided in the application and the information provided in all supporting documents and forms was true and correct in all material respects and that the applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, with which Vision Hospitality proved compliance, as illustrated in Exhibit HH;

       f.     it did not reduce the number of employees or the average paid hours of employees between January 1, 2020 and the end of the Covered Period, with which Vision Hospitality proved compliance, as illustrated in Exhibit HH;

       g.     it was unable to operate between February 15, 2020, and the end of the Covered Period at the same level of business activity as before February 15, 2020 due to compliance with requirements established or guidance issued between March 1, 2020 and December 31, 2020, by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration, related to the maintenance of standards of sanitation, social distancing, or any other work or customer safety requirement related to COVID-19, with which Vision Hospitality proved compliance, as

illustrated in Exhibit HH.

184.    On December 8, 2020, Vision Hospitality received notification that its First Draw PPP Loan had been forgiven.

C.    Second Draw PPP Loan Application

185.    On January 12, 2021, Vision Hospitality applied for a Second Draw PPP Loan through Citizens National Bank of Meridian ("Lender"). A copy of Vision Hospitality's Second Draw PPP Loan Application is attached hereto as **Exhibit II**.

186.    As part of its Second Draw PPP Loan Application, Vision Hospitality certified, *inter alia*, that:

a.    it was eligible to receive a loan under the rules in effect at the time the application was submitted, which Vision Hospitality submitted, proving its eligibility, specifically, was engaged in a business with a NAICS code that begins with 72, had more than one physical location, and had less than 500 employees per location as detailed in Exhibit II.

b.    all loan proceeds would be used only for business-related purposes as specified in the loan application and consistent with the PPP Rules.

c.    it had realized a reduction in gross receipts in excess of 25% relative to the relevant comparison time period, with which Vision Hospitality proved compliance, as illustrated in Exhibit II.

d.    the funds would be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules.

e.    the information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

187.    On January 23, 2021, the Lender approved Vision Hospitality's application.

188.    On February 1, 2021, loan proceeds were disbursed to Vision Hospitality and deposited into Vision Hospitality's bank account ending in X-93117.

189.    Vision Hospitality complied with all certifications in its Second Draw PPP Loan Application.

D.    Second Draw PPP Loan Forgiveness Application

190.    On July 21, 2021, Vision Hospitality submitted a forgiveness application for its Second Draw PPP Loan (Form 3508S).

126.    As part of its Second Draw PPP Loan Forgiveness Application, Vision Hospitality certified, *inter alia*, that:

a.    That the Borrower complied with all requirements in the PPP Rules, including the rules related to:

•    eligible uses of PPP loan proceeds, with which Vision Hospitality proved compliance, as illustrated in **Exhibit JJ**, attached hereto;

•    the amount of PPP loan proceeds that must be used for payroll costs, with which Vision Hospitality proved compliance, as illustrated in Exhibit JJ;

•    the calculation and documentation of the Borrower's revenue reduction (if applicable), with which Vision Hospitality proved compliance, as illustrated in Exhibit JJ; and

•    the calculation of the Borrower's Requested Loan Forgiveness Amount, with which Vision Hospitality proved compliance, as illustrated in Exhibit JJ.

b.    That the information provided in this application was true and correct in all material respects and that applicant understood that knowingly making a false statement to obtain forgiveness of an SBA-guaranteed loan is punishable under the law, with which Vision Hospitality

proved compliance, as illustrated in Exhibit JJ.

191.    On July 27, 2021, Vision Hospitality received notification that its Second Draw PPP Loan had been forgiven.

192.    Despite SBA forgiving Vision Hospitality's First and Second Draw PPP Loans, Vision Hospitality received a CID from Defendant DOJ requesting responses to Interrogatories and production of documents related to its application for PPP loans and loan forgiveness. As such, Vision Hospitality is under active investigation from DOJ, and an actual case and controversy exists.

**CLAIMS FOR RELIEF**

**DECLARATORY JUDGMENT ACT, 28 U.S.C. § 2201**

193.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

194.    Plaintiffs face the risk of a civil enforcement action under the FCA.

195.    Defendants' interpretation of the FCA and its regulations is inconsistent with the statutory and regulatory text and purports to obligate Plaintiffs to follow requirements that are unsupported by the relevant statute and regulations.

196.    Accordingly, an actual or substantial controversy exists between Plaintiffs and Defendants as to their respective legal rights and duties.

197.    This dispute is ripe. As set forth above, on information and belief, Defendants intend to file a civil enforcement action based on alleged violations of the False Claims Act, and Plaintiffs dispute the factual and legal basis for such action.

198.    A declaration would clarify and settle the parties' legal obligations under the text of the FCA and its implementing regulations.

199.     Plaintiffs are thus entitled to declaratory relief as set forth below.

**WRIT OF MANDAMUS AS TO THE**
**SECOND DRAW PPP LOAN FORGIVENESS APPLICATIONS**
**FOR DOTHAN HOSPITALITY, HOPE HULL,**
**MONTGOMERY DOWNTOWN, AND ENTERPRISE**
**(28 U.S.C. §§ 1361 and 1651(a))**

127.    Dothan Hospitality, Hope Hull, Montgomery Downtown, and Enterprise Hotels repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

128.    In relevant part, the All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writes necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

129.    District Courts may grant mandamus relief by "compel[ling] an officer or employee of the United States of any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

130.    A mandamus is warranted when an agency's delay in rendering a decision is egregious. *In re Nat. Res. Def. Council, Inc*., 956 F.3d 1134, 1138 (9th Cir. 2020). "Repeatedly courts in this and other circuits have concluded that "a reasonable time for agency action is typically counted in weeks or months, not years." *In re Nat. Res. Def. Council, Inc*., 956 F.3d 1134, 1139 (9th Cir. 2020) (internal quotations omitted.); *see In re Core Commc'ns*, 531 F.3d 849, 857 (D.C. Cir. 2008) (finding six-year delay unreasonable); *In re Bluewater Network*, 234 F.3d 1305, 1316 (D.C. Cir. 2000) (finding nine-year delay unreasonable); *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1150 (D.C. Cir. 1992) (per curiam) (finding six year delay unreasonable).

131.    As outlined above, Dothan Hospitality, Hope Hull, Montgomery Downtown, and Enterprise Hotels submitted their Second Draw PPP Loan Forgiveness Application and accompanying documents to SBA on August 2, 2021 (Montgomery Downtown) and July 19, 2021

(Dothan Hospitality, Hope Hull, and Enterprise Hotels). As of July 10, 2024, almost three years after receiving Dothan Hospitality's, Hope Hull's, Montgomery Downtown's, and Enterprise Hotels' loan forgiveness applications, SBA has not provided Dothan Hospitality, Hope Hull, Montgomery Downtown, and Enterprise Hotels with notification that their Second Draw PPP Loans have been forgiven.

132.    A mandamus compelling SBA forgive to the Second Draw PPP Loans of Dothan Hospitality, Hope Hull, Montgomery Downtown, and Enterprise Hotels is warranted given the egregious and unreasonable delay.

## PRAYER FOR RELIEF

For the reasons above, Plaintiff respectfully requests that the Court:

1. Declare that:

   a. Plaintiffs were eligible to apply for a PPP loan;

   b. Plaintiffs were eligible to receive a PPP loan;

   c. Plaintiffs' commingling of PPP loan proceeds with current monies in existing bank accounts was not prohibited by and did not violate the U.S. Code or SBA regulations;

   d. Plaintiffs used the PPP loan proceeds appropriately for eligible expenses;

   e. Plaintiffs' use of its own funds, which were commingled with but in excess of PPP loan proceeds, for non-PPP purposes did not violate the U.S. Code or SBA regulations, and

   f. Plaintiffs did not falsely certify their PPP loan forgiveness application.

2. Enter an order compelling Defendants SBA and Administrator Isabella Casillas Guzman to:

a. Immediately forgive the Second Draw PPP Loans of Dothan Hospitality, Hope Hull, Montgomery Downtown, and Enterprise Hotels; and

b. Implement a full, speedy, and adequate administrative review process if Defendants intend to deny forgiveness of the Second Draw PPP Loans of Dothan Hospitality, Hope Hull, Montgomery Downtown, and Enterprise Hotels.

3. Award costs and attorneys' fees to Plaintiff; and

4. Grant such other relief as may be just and proper.

THIS the 12th day of July, 2024.

Respectfully submitted,

*/s/ J. Breanne Zarzour*
J. BREANNE ZARZOUR
*Attorneys for Plaintiffs*

OF COUNSEL:
**PHELPS DUNBAR LLP**
101 Dauphin Street, Suite 1000
Mobile, Alabama 36602
Post Office Box 2727
Mobile, Alabama 36652
251 432 4481
Brie.Zarzour@phelps.com

**DEFENDANTS TO BE SERVED BY PLAINTIFFS**